**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CYNTHIA PRYOR, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2020-CV-00028 |
| | ) | Honorable John J. Tharp, Jr. |
| v. | ) | Magistrate: Honorable Sunil R. |
| | ) | Harjani |
| TARGET CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT TARGET TO PRODUCE
ALLEGED PRIVILEGE DOCUMENTS AFTER AN IN-CAMERA INSPECTION OF
THOSE SAME DOCUMENTS**

NOW COMES Plaintiff, CYNTHIA PRYOR, by and through her attorneys, BIZZIERI LAW OFFICES, LLC, and for her Motion to Compel Defendant, TARGET, to Produce the Alleged Privileged Documents After an In-Camera Inspection of Those Same Documents, states as follows:

**PROCEDURAL HISTORY**

On January 30, 2020, the Honorable Sunil R. Harjani entered an Order causing written discovery requests to be issued by March 6, 2020. (Dkt. #21.) Plaintiff complied and issued her written discovery requests on February 24, 2020.

Due to the recent pandemic and this Court's March 30, 2020 Covid-19 Order, Defendant answered written discovery and provided a privilege log on April 7, 2020. (See, Exhibit A, Target Corp.'s Privilege Log.)

On April 9, 2020, pursuant to FRCP 37, Plaintiff's counsel sent a letter via email to Defendant's counsel regarding his position on the insufficiency of the provided Privilege Log and

1

requested an updated/amended privilege log that was complicit with FRCP 26(b)(5) and relevant case law. (See, Exhibit B, Plaintiff counsel's 4/9/20 Rule 37 letter.)

Shortly thereafter, Defendant's counsel emailed a reply stating that he disagreed with Plaintiff counsel's position, to which, Plaintiff's counsel advised of the necessity to file this Motion with this Court. (See Exhibit C, email exchanges between lead trial counsels on 4/9/20.)

On May 14, 2020, after email exchanges, Defendant agreed to submit a revised and clarified privilege log.

On May 18, 2020, Defendant's revised and clarified privilege log was sent via email. (See Exhibit D, Target Corp.'s Revised and Clarified Privilege Log.)

On May 19, 2020, Plaintiff's counsel informed Defendant's counsel was still not sufficient and was still not complicit with FRCP 26(b)(5) and relevant case law.

On May 20, 2020, lead counsel for Defendant and Plaintiff's counsel spoke about the privilege log and the lawyers agreed we were at an impasse.

On June 26, 2020, this Honorable Court ordered, in relevant part, for the Defendant to comply with FRCP 26(b)(5) and provide Plaintiff with a proper privilege log. (Dkt. #46.)

On July 27, 2020, Defendant provided a Second Amended Privilege Log. (See, Exhibit E, Target Corp.'s Second Amended Privilege Log.)

On August 11, 2020, Plaintiff's counsel emailed Defendant's counsels advising that the Second Amended Privilege Log was still insufficient and that the documents contained within the privilege log are seemingly discoverable. (See Exhibit F, email exchanges between lead trial counsels from 8/11/20 through 8/21/20.)

After a few emails were exchanged as to the availability of trial counsels to meet and confer, trial counsels of record spoke about the Second Amended Privilege Log on August 25, 2020 pursuant to FRCP 37. That said, the parties are at an impasse with respect the privilege log and alleged privileged documents; and as such, this Motion is now ripe.

## LEGAL ANALYSIS

### A. Target's Privilege Log Still Does Not Fully Comply with FRCP 26(b)(5) and The Relevant Case Law

Target's third attempt at a privilege log or Second Amended Privilege Log (Ex. E), still does not meet the criteria under Fed.R.Civ.P. 26(b)(5), the applicable case law or this Honorable Court's standing order/ procedure as it relates to Privilege Logs. "The party asserting the privilege must produce a privilege log 'that identifies for each separate document the following information: the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged.'" *Schmalz v. Vill. of N. Riverside*, No. 13 C 8012, at *6 (N.D. Ill. Feb. 7, 2018), citing *Muro v. Target Corp.*

Here, all of the claim notes were received by the "Claim File"; an email was received by "Target Store-T2087", emails were sent/received by "James Foglton, Leader on Duty", an email was sent to "Target Support", or emails were sent/received by various Sedgwick Claims Adjusters[1]; and, status reports were sent by a "Target Human Resources Representative". Based upon the entries within the Second Amended Privilege Log, every recipient of each document is not identified by name and/or capacity. These entries do not allow Plaintiff nor this Court to know all the individuals who received these communications/reports or whether these vague and general

---

[1] Sedgwick is the Third-Party Administrator for Target's insurer, ACE American Insurance Co.

3

employment positions are within Target's control group. The purpose of the production is not identified for each document, either. Lastly, a specific explanation as to why the documents are believed to be privileged has not been asserted. Instead, the same three privileges, stated generally and conclusory, are asserted over all documents; and it is seemingly obvious that all three privileges cannot, and do not, apply to all the documents.

"Inadequate privilege logs are a significant and all-too-frequent problem in federal litigation. *See e.g.*, *United States ex rel. McGee v. IBM Corp.*, 2017 WL 1232616, at *2 (N.D. Ill. 2017); *Slaven v. Great Am. Ins. Co.*, 2014 WL 4470723, at *2 (N.D. Ill. 2014)(" Baxter failed to identify or justify a claim of privilege in many instances and identified each document in such summary fashion that hundreds of hours have been required to evaluate Baxter's claims."). Under Rule 34 of the Federal Rules of Civil Procedure a party generally has 30 days to respond to a document request, including the production of a privilege log. Compliance with Rule 26(b)(5)(A) is not optional, *Cormack v. United States*, 118 Fed. Cl. 39, 42-43 (2014), and noncompliance can, in the discretion of the court, have serious consequences, including a finding that the claim of privilege has been waived or forfeited. *See Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017); *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005); *Kannaday v. Ball*, 292 F.R.D 640, 647 (D. Kan. 2013). A court must make a "case-by-case determination" of whether privilege should be waived; that is, a holistic reasonableness analysis, intended to forestall needless waste of judicial time and resources, as well as tactical manipulation of the rules and the discovery process is required. *Holifield v. United States*, 909 F.2d 201, 204 (7th Cir. 1990); *In re Subpoena to Produce Documents of Clapp, Moroney, Bellagamba*, 2014 WL 3784112, at *3 (N.D. Cal. 2014)."

*Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, No. 17 C 1973, at *3 (N.D. Ill. Jan. 10, 2018).

Given that this is Target's third attempt at a privilege log and yet it is still insufficient, waiver is certainly reasonable and appropriate, especially since the log still fails to meet the requirements of this Honorable Court's standing order/procedure as it relates to Privilege Logs. The subject privilege log and alleged privilege documents have been the subject of contested motion practice and continues to be an ongoing issue between the parties for nearly 5 months (since early April 2020) and will continue beyond this point with further court intervention. As such, Plaintiff respectfully requests that this Honorable Court find that Target has waived all privileges asserted over these documents due its failure to meet the criteria under Fed.R.Civ.P. 26(b)(5), the applicable case law and this Honorable Court's standing order/ procedure as it relates to Privilege Logs.

**B.      Target Has the Burden to Show the Facts That Give Rise to the Asserted Privileges**

**1.      Attorney-Client Privilege**

Target contends that the attorney-client privilege is applicable to <u>all</u> documents referenced in the Second Amended Privilege Log privileged. Because this lawsuit is a diversity action, the applicability and scope of the attorney-client privilege is governed by Illinois law. *See Wielgus v. Ryobi Techs.,* Inc., No. 08 CV 1597, 2010 WL 3075666, at *3 (N.D. Ill. Aug. 4, 2010); *see also* Fed. R. Evid. 501. Illinois law, like federal law, requires the court to determine whether the contested communication "originated in confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential." *Rounds v. Jackson Park Hosp. & Med. Ctr.,* 319 Ill.App.3d 280, 285-86 3 (1st Dist. 2001); *see also Sandra T.E. v. South Berwyn Sch. Dist. 100,* 600 F.3d 612, 618 (7th Cir.

5

2010). *Zuniga v. Sw. Airlines*, No. 11 CV 939, at *7 (N.D. Ill. Jan. 22, 2013). The attorney-client privilege is a narrow one, and only applies within certain carefully described limits. In the Seventh Circuit, similar to the State of Illinois, the scope of the privilege has been defined as follows: (1) where legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived. *White,* 950 F.2d at 430 (see also, *In re Grand Jury January 246,* 272 Ill.App.3d 991, 996, 209 Ill.Dec. 518, 651 N.E.2d 696 (1995) (citing *People v. Adam,* 51 Ill.2d 46, 48, 280 N.E.2d 205 (1972); *Chicago Tr. Co. v. Cook Cty. Hosp.*, 298 Ill. App. 3d 396, 407, 698 N.E.2d 641, 649 (1998)). The legal advice given to the client must be the predominant element in the communication; the privilege will not apply where the legal advice is incidental to business advice. *United States v. International Business Machines Corp.,* 66 F.R.D. 206, 212 (S.D.N.Y.1974). As a result, where documents or conversations are created pursuant to business matters, they must be disclosed. *International Business Machines Corp.,* 66 F.R.D. at 212." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993.)

Within the corporate context, Illinois requires corporations asserting the attorney-client privilege to show that the contested communication was made by someone within the "corporate 'control group.'" *Hyams v. Evanston Hosp.,* 225 Ill.App.3d 253, 527-58 (1st Dist. 1992). An employee falls within the "control group" when that person's "advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority." *Favala v. Cumberland Eng'g Co.,* 17F.3d 987, 989-90 (7th Cir. 1994) (quoting *Consol. Coal Co.*

6

*v. Bucyrus-Erie Co.,* 89 Ill.2d 103, 120 (1982)). Critically, however, "the individuals upon whom [the employee] may rely for supplying information are not members of the control group." *Id.* at 990 (internal quotation marks omitted). Further, an individual is not within the control group if his or her "role was one of supplying the factual bases upon which were predicated the opinions and recommendations of those who advised the decision-makers." *Id.* (internal quotation marks omitted). If an employee does fall within the control group, the court next determines whether "the communication originated in a confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential." *Id.* (internal quotation marks omitted). *Zuniga v. Sw. Airlines*, No. 11 CV 939, at *7-8 (N.D. Ill. Jan. 22, 2013).

It appears that most of the documents alleged to be protected under the attorney-client privilege do not meet the criteria of being predominantly legal advice, but rather are communications about the facts of this matter learned during normal and routine investigations by those individuals outside of the control group of Target. Further, we do not know if these communications are truly confidential based upon the inadequate log.

### 2. Insured-Insurer Privilege

Target contends that the insured-insurer privilege is applicable to <u>all</u> documents referenced in the Second Amended Privilege Log are privileged. The party asserting an evidentiary privilege bears the burden of establishing its applicability to the requested information. *Roach v. Springfield Clinic,* 157 Ill. 2d 29, 41 (1993); *Pietro v. Marriott Senior Living Services, Inc.*, 348 Ill. App. 3d 541, 549 (1st Dist. 2004). The insured-insurer privilege is an extension of the attorney-client privilege and exists "where the insurer is under an obligation to defend the insured." *Pietro*, 348

Ill. App. 3d at 551. "To be entitled to the protection of the attorney-client privilege, a claimant must show that: (1) the statement originated in confidence that it would not be disclosed; (2) it was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services; and (3) it remained confidential." Id. The privilege extends to the insured-insurer context because the insured assumes "that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured." Id. In order to extend the attorney-client privilege to the insurer-insured context, "the party asserting privilege must prove: (1) the identity of the insured; (2) the identity of the insurance carrier; (3) the duty to defend a lawsuit; and (4) that a communication was made between the insured and an agent of the insurer." Id. at 552.

A communication is not entitled to protection under the insured-insurer privilege unless the dominant purpose of the communication is to obtain legal advice or representation. See *Chicago Trust Co. v. Cook County Hospital*, 298 Ill.App.3d 396, 409, 698 N.E.2d 641, 651-651 (1st Dist. 1998). A communication that otherwise might be entitled to the protection of the privilege will lose that protection if it is shared with others who are not necessary to the purpose of obtaining legal advice or representation. See *Pietro*.

It appears that most of the documents alleged to be protected under the insured-insurer privilege, an extension of the attorney-client privilege, do not meet the criteria of being predominantly related to legal advice for the protection of the insured, but rather are communications about the facts of this matter learned during normal and routine investigations by those individuals outside of the control group of Target. Further, we do not know if these communications are truly confidential based upon the inadequate log.

### 3. Work Product Privilege

Target also contends that the work-product privilege is applicable to <u>all</u> documents referenced in the Second Amended Privilege Log. While the attorney-client privilege is governed by Illinois law in this case, the work-product doctrine is determined by federal law. *See Fed.R.Civ.P. 26(b)(3).* "The work product privilege operates only within narrow confines. The principal restriction is that the material in question must have been produced in anticipation of litigation. *See,* Fed.R.Civ.P. 26(b)(3); *Harper v. Auto–Owners Ins. Co.,* 138 F.R.D. 655, 659 (S.D.Ind.1991). Furthermore, the anticipation of future litigation must have been the primary motivation which led to the creation of the documents. *National Union Fire Ins. Co. v. Murray Sheet Metal Co.,* 967 F.2d 980, 984 (4th Cir.1992). Although the litigation need not be ongoing or imminent, "the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." *Janicker v. George Washington University,* 94 F.R.D. 648, 650 (D.D.C.1982). Documents which do not refer to work product prepared by an attorney or other agent of a party to aid in forthcoming litigation, and which were generated in the ordinary course of business, are discoverable. <u>See</u>, *Harper,* 138 F.R.D. at 660, 661; *Henderson v. Zurn Industries, Inc.,* 131 F.R.D. 560, 570 (S.D.Ind.1990)." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 135–36 (N.D. Ill. 1993.) The *Allendale* court elaborated on this point and stated that, "it is the very nature of an insurer's business to investigate and evaluate the claims of its insured, and the fact that the investigation and evaluation continues after litigation commences is not conclusive proof that material has been created to aid in that litigation. Moreover, Allendale was contractually obligated to continually notify its reinsurers of the status

of the claim, and such routine notifications do not qualify as work-product of an attorney or agent of Allendale prepared in anticipation of litigation." *Id.*

The mere fact that litigation does eventually ensue does not, by itself, cloak materials prepared by an attorney with the protection of the work product privilege; the privilege is not that broad. Rather, as the court stated in *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 604 (8th Cir.1977): "The work product rule does not come into play merely because there is a remote prospect of future litigation. Moreover, the mere contingency that litigation may result is not determinative. If in connection with an accident or an event, a business entity in the ordinary course of business investigates for its own purposes, the resulting investigative report is produceable in civil pre-trial discovery. A more or less routine investigation of a possibly resistable claim is not sufficient to immunize an investigative report developed in the ordinary course of business." *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118–19 (7th Cir. 1983.)

It appears that most of the documents alleged to be protected under the work product privilege do not meet the criteria of being made in anticipation of litigation, but rather are communications about the facts of this matter learned during normal and routine investigations that would have occurred irrespective of litigation.

**CONCLUSION**

This is Target's third attempt at a privilege log; yet it is still insufficient. As such, Plaintiff respectfully requests that this Honorable Court find that Target has waived of all privileges asserted over these documents due its failure to meet the criteria under Fed.R.Civ.P. 26(b)(5), the applicable case law and this Honorable Court's standing order/ procedure as it relates to Privilege Logs.

In the alternative, Plaintiff respectfully request that this Honorable Court order the Production of the Privileged Documents to be tendered to the Court for In-Camera Inspection; and, thereafter, grant Plaintiff's Motion to Compel the Production of said Documents.

          Respectfully submitted,

          BIZZIERI LAW OFFICES, LLC


          By: */s/ James L. Bizzieri*
               James L. Bizzieri

BIZZIERI LAW OFFICES, LLC
James L. Bizzieri (6284686)
10258 S. Western Avenue, Suite 210
Chicago, Illinois 60643
T: (773)881-9000
F: (773)881-9009
jlbizzieri@bizzierilaw.com

## CERTIFICATE OF SERVICE

I, James L. Bizzieri, an attorney, hereby certify that on **September 1, 2020**, I electronically filed the attached Motion to Compel and/or For In Camera Inspection with the Court's CM/ECF system, which simultaneously sent an electronic copy of the same to all counsel of record.

*/s/ James L. Bizzieri*
James L. Bizzieri
